IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM SIMMENS, on Behalf of Himself and All Others Similarly Situated<br>Plaintiff, | :<br>:<br>:<br>: | CIVIL ACTION<br><br>NO. 07-668 |
| vs. | :<br>: | |
| THE COCA COLA COMPANY, NESTLE USA, INC. AND BEVERAGE PARTNERS WORLDWIDE<br>Defendants. | :<br>:<br>:<br>:<br>: | |

**ORDER AND MEMORANDUM**

**O R D E R**

**AND NOW**, this 3rd day of July, 2007, upon consideration of Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (Document No. 12, filed April 30, 2007); and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (Document No. 30, filed June 15, 2007), **IT IS ORDERED** that Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) is **GRANTED**. The Clerk of the United States District Court for the Eastern District of Pennsylvania shall **TRANSFER** the case to the United States District Court for the District of New Jersey.

**MEMORANDUM**

**I.   BACKGROUND**

Plaintiff filed this case as a class action arising out of allegedly improper marketing of Enviga, a carbonated green tea beverage by defendants The Coca-Cola Company, Nestlé USA, Inc., and Beverage Partners Worldwide. In advertising Enviga, defendants represent that the

beverage burns more calories than it contains, resulting in negative calories for the consumer.[1] Plaintiffs contend that the claims made by defendants in marketing Enviga are not supported by evidence that most consumers would experience any calorie burning benefit.[2]

The Complaint was filed on February 20, 2007 "on behalf of all consumers of Enviga nationally" and "on behalf of a sub-class of consumers of Enviga residing in Pennsylvania." Compl. ¶ 2. The Complaint sets forth three counts against all defendants: breach of express warranty (Count I), breach of implied warranty of fitness for a particular purpose (Count II), and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. Ann. §§ 201-2, *et seq* (Count III).[3]

Also on February 20, 2007, a nearly identical class action "on behalf of all consumers of Enviga nationally" and "on behalf of a sub-class of consumers of Enviga residing in New Jersey," was filed in the District of New Jersey by the same attorneys who represent the plaintiff in this case. Melfi v. The Coca-Cola Co., CA No. 07-828. Prior to the filing of either class action, on February 1, 2007, the Center for Science in the Public Interest filed suit against the

---

[1] These representations include advertising slogans such as "Be positive. Drink negaitve." and "Burning calories is now officially delicious." Compl. ¶ 29.

[2] The claim that consumption of Enviga results in negative calories is based on a study of "healthy normal weight 18-35 year olds" who consumed three cans of Enviga daily and were found to have increased their calorie burning by 60-100 calories. Compl. ¶ 27. Plaintiff argues that "[d]efendants failed to disclose that there are no studies that show that in the vast majority of the population, who are not between ages 18 and 35, or who are between ages of 18 to 35 but are not of a healthy normal weight, Enviga provides any calorie burning benefit." Id.

[3] Specifically, the Complaint alleges that defendants represented that Enviga has characteristics, uses, or benefits that it does not have in violation of 73 P.S. § 201-2(4)(v), and/or otherwise engaged in other fraudulent or deceptive conduct which created the likelihood of confusion or of misunderstanding in violation of 73 P.S. § 201-2(4)(xxi). Compl. ¶ 80.

same defendants in the District of New Jersey. <u>Center for Science in the Public Interest v. The Coca-Cola Co.</u>, CA No. 07-539. The three complaints are nearly identical in their recitation of the facts.

On April 30, 2007, defendants jointly filed a Motion to Transfer pursuant to § 1404(a) and a Motion to Dismiss Counts II and III of the Complaint. For the following reasons, defendants' Motion to Transfer pursuant to § 1404(a) is granted and this case is transferred to the District of New Jersey. Because the case will be transferred, the Court does not address the Motion to Dismiss.[4]

## II.   LEGAL STANDARD

The question before the Court is whether this case should be transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). 28 U.S.C. § 1404(a) permits transfer on the ground of venue, and states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Once a court determines that venue would be proper in another district, the court must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995). The party moving to transfer venue bears the burden of establishing the need for the transfer. <u>Id.</u>; <u>Miller v. Consol. Rail Corp.</u>, 196 F.R.D. 22, 24 (E.D. Pa. 2000).

The Third Circuit has set out a number of public and private interests to be considered

---

[4]Additionally, the Court notes that a nearly identical Motion to Dismiss is pending in the <u>Melfi</u> action.

when weighing a transfer pursuant to § 1404(a). Jumara, 55 F.3d at 879. "Private interests" include plaintiff's forum preference as manifested in the original choice; defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses; and the location of books and records. Id. at 879. "Public interests" include the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. Id. at 879-80.

## III.    DISCUSSION

Section 1404(a) requires the Court to answer two questions: (1) Could the case have been brought in the District of New Jersey? (2) Is a transfer in the interest of justice? With respect to the first question, a "district is one in which an action 'might have been brought' if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue." Yang v. Odom, 409 F. Supp. 2d 599, (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970)). The Court concludes that the District of New Jersey is a district where this action might have been brought. There is no dispute that the District of New Jersey has the requisite jurisdiction over this case and is a proper venue to adjudicate this case.

Accordingly, the Court must conclude whether a transfer is in the interests of justice. To make this determination, the Court will consider those relevant private and public interest factors that weigh in favor of and against a transfer.

### A.    Factors Favoring Transfer

Defendants argue that, under Jumara, the dispositive factor in this case is the pendency of the related Melfi case in the proposed transferee court. Specifically, defendants argue that because the cases "arise from the same set of facts and occurrences," and in fact the cases "are virtually identical," transfer is appropriate. Def. Mot. Trans. at 12. Although not argued in the Motion, the Court notes that the Center for Science in the Public Interest case filed in the District of New Jersey also arises from the same set of facts and occurrences and Melfi and the instant case.

The presence of related cases in the transferee forum is a strong factor in favor of transfer. See, e.g., Schiller-Pfeiffer, Inc. v. County Home Prods., Inc., 2004 U.S. Dist. LEXIS 24180, *30 (E.D. Pa. Dec. 1, 2004) (holding that the presence of a related case in the transferee forum is a "strong reason" to grant a change of venue); Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001) ("[C]ourts have found that the presence of related cases in the transferee forum is a reason to grant a transfer."). "In fact, courts in this District have concluded that this factor alone is sufficient to warrant a transfer," even when the convenience of the parties and witnesses would point to a denial. Schiller-Pfeiffer, 2004 U.S. Dist. LEXIS 24180, at *13; Ayling v. Travelers Property Casualty Corp., 1999 U.S. Dist. LEXIS 16716, *13 (E.D. Pa. Oct. 27, 1999); see also, e.g., Southhampton Sports Zone, Inc., 2003 U.S. Dist. 18126, *5 (E.D. Pa. Sept. 10, 2003).

The Supreme Court has stated that "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in two different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Continental Grain Co. v. The Barge FBL-585, 364 U.S. 19, 26 (1960). Allowing two separate actions on

5

behalf of the same class might lead to inconsistent results, even if the witnesses and documentary evidence were identical. Ayling, 1999 U.S. Dist. LEXIS 16716, at *14. This danger is of particular concern in this case as the pending Motion to Dismiss is nearly identical to a Motion to Dismiss pending in the Melfi action.

> Moreover, transferring this action will benefit all parties because
>
> the . . . actions could be consolidated before one judge thereby promoting judicial efficiency, pretrial discovery could be conducted in an orderly manner, witnesses could be saved the time and expense of appearing at trial in more than one court, duplicative litigation involving the filing of records in both courts could be avoided eliminating unnecessary expense, and the possibility of inconsistent results could be avoided.

Pall Corp. v. Bentley Lab, Inc., 523 F. Supp. 450, 453 (D. Del. 1981). "Even though the claims of the two cases here are not exactly the same, they arise from the same set of facts and occurrences. If these actions were filed in the same district, consolidation would certainly be appropriate." Schiller-Pfeiffer, Inc., 2004 U.S. Dist. LEXIS 24180, at *31.

Thus, the Court concludes that the pendency of two related cases in the District of New Jersey weighs strongly in favor of transferring this case.

### B.  Factors Weighing Against Transfer

Plaintiff argues that transfer is not necessary in this action and notes "it is precisely because this case and the New Jersey case [Melfi] assert legal claims under their respective states' statutes that two separate complaints were filed on behalf of two separate subclasses." Pl.'s Resp. to Mot. to Trans. 3.

First, as noted by plaintiff, the Court must accord deference to plaintiff's initial choice of forum. However, defendants argue that as nominal representative of a purported nationwide

6

class, plaintiff's choice of forum is entitled to minimum weight.  See Koster v. Lumbermen's Mut. Cas. Co., 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.").  Moreover, the purported class in this case is largely coextensive with that named in the District of New Jersey class action.  Accordingly, the Court concludes that this factor does not weigh against transfer.

Second, plaintiff's argument that "consideration of the convenience of the parties, witnesses, and counsel, and the location of relevant documents, weighs in favor of denying a transfer" is unpersuasive.  Pl.'s Resp. 7.  Given the close proximity between the District of New Jersey and the Eastern District of Pennsylvania, these considerations are neutral and do not weigh against transfer.

Plaintiff's most compelling argument against transfer is the fact that this case involves a purported Pennsylvania sub-class and a claim under Pennsylvania's UTPCPL.  Although courts have held that it is desirable for issues of state law to be determined by a local federal court, Howell v. Shaw Industries, 1993 U.S. Dist. LEXIS 13562, *19 (E.D. Pa. Oct. 1, 1993), Pennsylvania subclass and Pennsylvania state law claims are not sufficient to weigh against transfer.  In a similar case in which plaintiffs sought certification of a nationwide class and asserted claims under the Pennsylvania UTPCPL, Judge John R. Padova noted that because "class actions often require a federal court to apply the law of all fifty states," the UTPCPL claim alone did not weigh in favor of a transfer.  Rosen v. Fidelity Fixed Income Trust, 1995 U.S. Dist. LEXIS 13877, *24 (E.D. Pa. Sept. 18, 1995).  On that issue, Judge Padova noted that "either

7

court can competently apply the law of any state." Id.; see also Howell, 1993 U.S. Dist. LEXIS 13784, at *19-20.  Accordingly, as both this Court and the District of New Jersey can competently adjudicate plaintiff's claims, the Court concludes that this factor does not weigh against a transfer.

**IV.     CONCLUSION**

In sum, after reviewing the relevant private and public interest factors, the Court concludes that defendants have demonstrated that the balance of fairness and convenience weighs strongly in favor of transfer of this case to the District of New Jersey.  Accordingly, defendants' Motion to Transfer pursuant to § 1404(a) is granted and this case is transferred to the District of New Jersey.

**BY THE COURT:**


**/s/ Honorable Jan E. DuBois**

**JAN E. DUBOIS, J.**